## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## SOUTHERN DIVISION

| | |
|---|---|
| KIMBERLYN ACKLIN, on behalf of herself and all others similarly situated, ) | Case No.  7:19-cv-00080 |
| ) | |
| Plaintiff, ) | CLASS ACTION COMPLAINT |
| ) | |
| vs. ) | |
| ) | JURY TRIAL DEMANDED |
| TURTLE CREEK ASSETS, LTD., ) | |
| ) | |
| Defendant. ) | |

Plaintiff, KIMBERLYN ACKLIN ("Plaintiff"), on behalf of herself and all others similarly situated, alleges the following upon information and belief based upon personal knowledge:

### NATURE OF THE CASE

1. Plaintiff brings this action for herself and others similarly situated seeking damages and any other available legal or equitable remedies resulting from the illegal actions of TURTLE CREEK ASSETS, LTD. (hereinafter "Turtle Creek" or "Defendant"), in negligently, knowingly, and/or willfully communicating with Plaintiff and by engaging in any conduct the natural consequence of which is to harass, oppress or abuse any person in connection with the collection of a debt, using language the natural consequence of which is to abuse the reader, using false, deceptive, or misleading representation or means in connection with the collection of any debt, representing that nonpayment of any debt will result in the arrest or imprisonment of any person unless such action is lawful, and the debt collector intends to take such action, threatening to take action that cannot legally be taken or that is not intended to be taken, using any false representation or deceptive means to collect or attempt to collect any debt,  failing to disclose that the communication is from a debt collector and failing to send Plaintiff a written notice of her alleged debt containing

1

the information required by § 1692g(a)(1)-(5), in violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA") and the North Carolina Collection Agency Act, N.C. Gen. Stat. § 58-70-1, *et seq.* ("NCCAA").

## JURISDICTION & VENUE

2. Jurisdiction of this Court arises under 15 U.S.C. § 1692k(d).

3. 28 U.S.C. § 1367 grants this court supplemental jurisdiction over the state claim alleged herein.

4. Venue is proper in the United States District Court for the Eastern District of North Carolina because Defendant does or transacts business in this District.

## PARTIES

5. Plaintiff, KIMBERLYN ACKLIN is a natural person residing in the City of Jacksonville, Onslow County, North Carolina and is a "consumer" as defined by the FDCPA, 15 U.S.C. § 1692a(3) and the NCCAA, § 58-70-90(1).

6. At all relevant times herein, Defendant was a company engaged, by use of the mails and telephone, in the business of collecting a debt from Plaintiff which qualifies as a "debt," as defined by the FDCPA, 15 U.S.C. § 1692a(5) and the NCCAA, § 58-70-90(2).

7. The principal purpose of Defendant's business is the collection of debts it purchased from third parties, using interstate commerce or the mails, and therefore is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6) and a "collection agency" as defined by the NCCAA, § 58-70-15.

8. During the course of its attempts to collect debts, Defendant sends to alleged debtors bills, statements, and/or other correspondence, via the mail and/or electronic mail, and initiates contact with alleged debtors via various means of telecommunication, such as by

2

telephone and facsimile.

9. Aaron's, Inc. (hereinafter "Aaron's") sells its delinquent consumer paper to Defendant at a fraction of its face value. *See Turtle Creek Assets, Ltd. v. Aaron's Inc.*, Case No 1:15-cv-03851 (N.D. Tex. November 3, 2015), Dkt. 1 ¶ 1.

10. After Defendant purchases consumer paper from Aaron's, Defendant seeks to enforce the consumer paper itself or repackage the consumer paper by region and sell it. *Id*. at ¶ 2.

11. As of November 2015, Defendant had purchased over $835 Million in consumer paper from Aaron's. *Id*. at ¶ 5.

12. Defendant is a Texas corporation. *Id*. at ¶ 6.

13. Aaron's is a specialty retailer who "markets its goods and services primarily to sub-prime customers by offering high-interest financing or payment options. However, those payment plans **often result in consumer default**." *Id*. at ¶ 11.

14. Defendant is "a privately-owned Dallas-based company in the business of purchasing large amounts of delinquent consumer paper from banks, credit card companies, and consumer finance companies. As part of its business model, Turtle Creek enters into contracts with large portfolio debt-sellers, re-packages the purchased consumer paper by state or region, and then either seeks to enforce the consumer paper itself, or sells the re-packaged consumer paper to downstream buyers by region for a margin. Turtle Creek has bought and sold several billions-of-dollars of paper through years." *Id*. at ¶ 12.

15. "In early 2010, Turtle Creek approached Aaron's about purchasing its consumer paper that it had charged-off as uncollectible. After months of negotiations, Turtle Creek agreed to purchase a large bulk file of Aaron's consumer paper. Once Turtle Creek purchased a large bulk file of Aaron's consumer paper, it re-packaged it by region and sold it to downstream

3

buyers across the country for a margin. Over the course of the next two years, Turtle Creek continued to buy Aaron's consumer paper and sell it to downstream buyers." *Id*. at ¶ 13.

16. From June 15, 2012 to February 15, 2013, "Aaron's agreed to sell approximately $11-13 Million of its Accounts to Turtle Creek…in exchange for Turtle Creek paying Aaron's 1.50% of the Accounts' face value." *Id*. at ¶ 15.

17. Defendant's website contains the following disclosures: "Please note that this communication is from a debt collector and this is an attempt to collect a debt. Any information obtained will be used for that purpose" and "At www.forwardproperties.net, you can find the same important information as on your customer letter, such as the original creditor, seller, merchant, account balance, account offers, and more." http://forwardproperties.net/ (last visited April 19, 2019), attached as Exhibit A.

18. Defendant is engaged in the collection of debts from consumers using the mail and telephone.[1]

19. Defendant sends collection letters to consumers to collect payment for outstanding account balances. *See* Collection Letters, attached as Exhibit B.

## FACTUAL ALLEGATIONS

20. At various and multiple times prior to the filing of the instant complaint, including within the one year preceding the filing of this complaint, Defendant contacted Plaintiff in an attempt to collect an alleged outstanding consumer debt originating with Aaron's.

21. In or around April 2019, in its attempt to collect the alleged debt owed by Plaintiff,

---

[1] Other lawsuits have been filed against Defendant for unlawful debt collection. For example, Defendant was named a defendant in two FDCPA lawsuits recently filed based on allegations of Defendant making empty threats to consumers to coerce the consumers into making a payment to Defendant. *See Daniel Aveline v. Turtle Creek Assets, Ltd.*, Case No 2:19-cv-120 (N.D. Ind. March 27, 2019), Dkt. 1 ¶¶ 23-24; *Brooke Watts v. Turtle Creek Assets, Ltd.*, Case No 3:19-cv-00055 (M.D. Miss. March 28, 2019), Dkt. 1 ¶¶ 21-26.

Defendant sent Plaintiff the letter attached as Exhibit C (the "Letter").

22. The Letter sought to collect a purported consumer debt incurred for personal, family or household purposes.

23. The Letter does not contain the amount of the debt, as required by § 1692g(a)(1) of the FDCPA.

24. The Letter does not contain the disclosure that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector, as required by § 1692g(a)(3) of the FDCPA.

25. The Letter does not contain the disclosure that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector, as required by § 1692g(a)(4) of the FDCPA.

26. The Letter does not contain the disclosure that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor, as required by § 1692g(a)(5) of the FDCPA.

27. The Letter does not contain the disclosure that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, as required by § 1692e(11) of the FDCPA.

28. The Letter does not contain the disclosure that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to

disclose in subsequent communications that the communication is from a debt collector, as required by § 58-70-110(2) of the NCCAA.

29. The Letter does not contain the disclosure of Defendant's collection agency permit number, as required by § 58-70-50 of the NCCAA.

30. Defendant conducted or operated a collection agency or did collection agency business without first securing a permit from the North Carolina Commissioner of Insurance, as required by § 58-70-1 of the NCCAA.

31. The Letter contains several false, deceptive, or misleading statements:

    a. Pursuant to North Carolina laws (NC Gen Stat § 14-167 – Failure to return hired property), **YOU HAVE FORTY-EIGHT (48) HOURS FROM THE RECEIPT OF THIS DEMAND TO RETURN THE LEASED PROPERTY TO THE LESSOR AT THE ADDRESS SPECIFIED IN THE RENTAL CONTRACT OR A CRIMINAL COMPLAINT WILL BE FILED WITH THE PROPER AUTHORITIES FOR CRIMINAL PROSECUTION.**"

    b. "If you are unable to return the below mentioned merchandise, please call the following number within (forty-eight) 48 hours of the receipt of this letter TO AVOID CRIMINAL CHARGES BEING FILED (refer to backside): 1-888-399-1701."

    c. The Letter represents that Plaintiff could be sentenced to imprisonment.

32. The telephone number 1-888-399-1701, is one of Defendant's telephone numbers.

33. When Defendant receives a call placed to 1-888-399-1701, Defendant's representative answers the call and attempts to collect the alleged debt.

34. Defendant cannot file criminal charges against Plaintiff.

6

35. At best, Defendant can request for a district attorney to pursue criminal charges against Plaintiff.

36. Arguendo, even if Defendant were able to request that a district attorney take some action against Plaintiff, it is the district attorney's decision to charge Plaintiff with a crime—not the Defendant's.

37. Arguendo, even if a district attorney were to pursue criminal charges against Plaintiff, such charges do not automatically mean that the district attorney would secure a conviction—let alone a judge or jury then deciding to imprison the Plaintiff.

38. The Letter includes several false, deceptive, or misleading statements about the North Carolina law that it cites.

39. Plaintiff received the Letter via certified US Mail on April 2, 2019.

40. More than 48 hours have passed since Plaintiff was served with the Letter.

41. To date, Defendant has not requested that criminal charges be pursued against Plaintiff.

42. To date, Defendant has not taken legal action against Plaintiff.

43. Defendant has no interest in the return of any property it may be entitled to repossess.

44. Defendant's acts as described above were done intentionally with the purpose of terrifying and coercing Plaintiff to pay the alleged debt.

45. The natural consequence of Defendant's acts was harassment, oppression and abuse of the Plaintiff.

46. The natural consequence of the language Defendant used in the Letter was to abuse the reader of the Letter.

## CLASS ALLEGATIONS

47. Plaintiff brings this claim individually and on behalf of a class pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3) (the "Class").

48. The Class consists of all consumers in North Carolina to whom Defendant sent a letter seeking to collect a debt, and which letter was sent on or after a date one year prior to the filing of this action.

49. On information and belief, the class is so numerous that joinder of all members is not practicable because there are hundreds and/or thousands of persons who have received debt collection letters and/or notices from Defendant that violate the specific provisions of the FDCPA and NCCAA. Plaintiff is complaining of a standard form letter and/or notice that is sent to hundreds, if not thousands, of persons.

50. There are questions of law and fact common to the class members, which predominate over any questions relating to individual class members. The predominant common questions are (a) whether Defendant engages in conduct the natural consequence of which is to harass, oppress or abuse any person in connection with the collection of a debt; (b) whether Defendant uses false, deceptive, or misleading representation or means in connection with the collection of any debt; (c) whether Defendant discloses its communication is from a debt collector; (d) whether Defendant threatens to take action that cannot be taken or is not intended to be taken; (e) whether defendant attempts to collect debt without written notice of the debt containing the information in § 1692g(a)(1)-(5); (f) whether such practices violate the FDCPA; and (g) whether such practices likewise violate the NCCAA.

51. Plaintiff's claim is typical of the claims of the class members. All are based on the same factual and legal theories.

8

52. Plaintiff has no interest adverse or antagonistic to the interest of the members of the Class.

53. Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions, FDCPA litigation and NCCAA litigation.

54. A class action is superior for the fair and efficient adjudication of this matter, in that:

   a. Individual actions are not economically feasible;

   b. Members of the class are likely to be unaware of their rights; and

   c. Congress intended class actions to be the principal enforcement mechanism under the FDCPA.

55. A Class Action will permit large numbers of similarly situated persons to prosecute their common claims in a single forum simultaneously and without the duplication of effort and expense that numerous individual actions would engender. Class treatment will also permit the adjudication of relatively small claims by many Class members who could not otherwise afford to seek legal redress for the wrongs complained of herein. Absent a Class Action, class members will continue to suffer losses of statutory protected rights as well as monetary damages. If Defendant's conduct is allowed proceed to without remedy they will continue to reap and retain the proceeds of their ill-gotten gains.

56. Defendant has acted on grounds generally applicable to the entire Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

**COUNT I**
**VIOLATION OF THE**
**FAIR DEBT COLLECTION PRACTICES ACT**
(By Plaintiff and the Class Against Defendant)

57. Plaintiff hereby incorporates the preceding paragraphs as if set forth in full herein.

58. Based upon the foregoing, Defendant's conduct violated the FDCPA as follows:

9

a. Engaging in any conduct the natural consequence of which is to harass, oppress or abuse any person in connection with the collection of a debt in violation of § 1692d;

b. Using language the natural consequence of which is to abuse the reader in violation of § 1692d(2);

c. Using any false, deceptive, or misleading representation or means in connection with the collection of any debt when Defendant engaged in, at least, the following discrete violations of § 1692e;

d. Representing that nonpayment of any debt will result in the arrest or imprisonment of any person unless such action is lawful, and the debt collector intends to take such action in violation of § 1692e(4);

e. Threatening to take action that cannot legally be taken or that is not intended to be taken in violation of § 1692e(5);

f. Using any false representation or deceptive means to collect or attempt to collect any debt in violation of § 1692e(10);

g. Failing to disclose that the communication is from a debt collector in violation of § 1692e(11);

h. Failing to advise a consumer in all subsequent communications that Defendant is a debt collector in violation of § 1692e(11);

i. Failing to notify Plaintiff during the initial communication with Plaintiff that the communication was an attempt to collect a debt and any information obtained would be used for that purpose in violation of § 1692e(11); and

j. Failing to send Plaintiff a written notice of her debt containing the information in § 1692g(a)(1)-(5).

10

59. Plaintiff alleges that to the extent that Defendant's actions, detailed above, violated the FDCPA, those actions were done knowingly and willfully.

60. As a direct and proximate result of Defendant's violations of the FDCPA, 15 U.S.C. § 1692 *et seq.*, Plaintiff and the members of the Class have suffered injury, and may each recover from Defendant one-thousand dollars ($1,000.00) in statutory damages in addition to actual damages and reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1692k.

61. The violations of the FDCPA, 15 U.S.C. § 1692 *et seq.*, described herein present a continuing threat to members of the Class and members of the general public in that Plaintiff is informed and believes and thereon alleges that Defendant continues to engage in these practices, and will not cease doing so unless and until forced to do so by this Court.

**COUNT II**
**VIOLATION OF THE**
**NORTH CAROLINA COLLECTION AGENCY ACT**
(By Plaintiff and the Class Against Defendant)

57. Plaintiff repeats and re-alleges paragraphs 1-56 of Plaintiff's Complaint as the allegations in Count II of Plaintiff's Complaint.

58. Based upon the foregoing, Defendant's conduct violated the NCCAA as follows:

    a. Using any unfair threat, coercion or attempt to coerce to collect any debt alleged to be due when Defendant engaged in, at least, the following discrete violations of § 58-70-95;

    b. Representing that nonpayment of an alleged debt may result in the arrest of any person in violation of § 58-70-95(5);

    c. Threatening to take action not in fact taken in the usual course of business, unless it can be shown that such threatened actin was actually intended to be taken in the particular case in which the threat was made in violation of § 58-70-95(7);

11

d.  Using any conduct the natural consequence of which is to oppress, harass or abuse any person in connection with the collection of a debt in violation of § 58-70-100;

e.  Using language that would ordinarily abuse the reader in violation of § 58-40-100(1);

f.  Using any fraudulent, deceptive or misleading representations to collect a debt when Defendant engaged in, at least, the following discrete violations of § 58-70-110;

g.  Failing to disclose that the communication is from a debt collector in violation of § 58-70-110(2);

h.  Failing to advise a consumer in all subsequent communications that Defendant is a debt collector in violation of § 58-70-110(2);

i.  Failing to notify Plaintiff during the initial communication with Plaintiff that the communication was an attempt to collect a debt and any information obtained would be used for that purpose in violation of § 58-70-110(2);

j.  Failing to disclose of Defendant's collection agency permit number in the correspondence it sent to Plaintiff, in violation of § 58-70-50 of the NCCAA; and

k.  Conducting or operating a collection agency or doing collection agency business without first securing a permit from the North Carolina Commissioner of Insurance, in violation of § 58-70-1 of the NCCAA.

59. Plaintiff alleges that to the extent that Defendant's actions, detailed above, violated the NCCAA, those actions were done knowingly and willfully.

60. As a direct and proximate result of Defendant's violations of the NCCAA, NC. Gen. Stat. § 58-70-1, *et seq.*, Plaintiff and the members of the Class have suffered injury, and may

each recover from Defendant four-thousand dollars ($4,000.00).

61. The violations of the NCCAA, NC. Gen. Stat. § 58-70-1, *et seq.*, described herein present a continuing threat to members of the Class and members of the general public in that Plaintiff is informed and believes and thereon alleges that Defendant continues to engage in these practices, and will not cease doing so unless and until forced to do so by this Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the Court to grant Plaintiff and the Class members the following relief against Defendant:

1. That this action be certified as a class action on behalf of the Class and Plaintiff be appointed as the representative of the Class;

2. For statutory damages of $500,000.00 or 1% of Defendant's net worth, whichever is the lesser, pursuant to 15 U.S.C. § 1692k and NC. Gen. Stat. § 58-70-130;

3. For reasonable attorneys' fees and costs of suit; and

4. For such further relief as this Court deems necessary, just, and proper.

## DEMAND FOR JURY TRIAL

Please take notice that Plaintiff demands a trial by jury in this action.

Respectfully submitted,

April 23, 2019                    By: /s/ Shireen Hormozdi
                                  Shireen Hormozdi
                                  Hormozdi Law Firm, PLLC
                                  North Carolina Bar No. 47432
                                  1770 Indian Trail Road, Suite 175
                                  Norcross, GA 30093
                                  Tel: 678–395-7795
                                  Cell: 678-960-9030
                                  Fax: 866-929-2434
                                  shireen@agrusslawfirm.com
                                  shireen@norcrosslawfirm.com

13

# EXHIBIT A



- Make A Payment
- Common Questions
- Contact Us
- Privacy Notice

# You may have debt, but you also have options.

Managing your debt starts here.

Lets Figure It Out

## We know life happens.

And, at times, customers may fall behind on financial commitments. We understand.
This website will help you understand the process, your options, and—most importantly—how we're committed to working together to resolve your debt.

forwardproperties.net



*Please note that this communication is from a debt collector and is an attempt to collect a debt. Any information obtained will be used for that purpose.*

Paying your bill is easy...

Choose the best option for you, and start down the road toward debt resolution by making a payment today.



# By Phone

**Hours of Operation (EST)**
Monday–Friday 8am–11pm
Saturday 8am–8pm
Sunday 11am–10pm



# By Mail

We encourage you to contact us at our toll-free number, so me may assist you in setting up a payment plan and can direct you to the appropriate mailing address

# Common Questions

### How do I make payments to Turtle Creek Assets

We offer a variety of options to make payment as easy and convenient as possible.
By Phone: Call an Account Representative toll-free at (800) 467-4748 during our hours of operation:
Monday–Friday 8am–11pm EST
Saturday 8am–8pm EST
Sunday 11am–10pm EST
By Mail: Or, you may send checks and payments to:
Turtle Creek Assets

### What information is available on my account at www.forwardproperties.net

At www.forwardproperties.net, you can find the same important information as on your customer letter, such as the original creditor, seller, merchant, account balance, account offers, and more.

### I'm ready to make a payment. What do I do now?

If you are having a technical issue or some other difficulty with your payment, please speak with an Account Representative toll-free at (800) 467-4748 during our hours of operation:
Monday–Friday 8am–11pm EST
Saturday 8am–8pm EST
Sunday 11am–10pm EST

# Privacy Notice

Turtle Creek Assets, Ltd. (dba: Forward Properties International, Inc) is delivering this Privacy Notice to you to generally describe the nonpublic personal and financial information we gather about you, and our privacy practices relating to such information and how those practices relate to the protection, use and disclosure of your nonpublic personal information (your "Customer Information"). Please carefully read this Privacy Notice. **What Information Do We Collect?** We collect certain personal information about you from the following sources: 1. Information we received from you. This may include: · Your name · Address · Social Security Number · Telephone number · Other relevant information that you provide 2. Information about your transactions with our affiliates, others or us. This may include: · Account balance · Payment history · Account activity 3. Information we receive from consumer reporting agencies (such as credit scores and history) and other information relating to your creditworthiness. **How Do We Use Your Information?** We do not disclose any nonpublic personal information about our customers or former customers to anyone, except as permitted by law. We restrict access to nonpublic information about you to those employees and entities that need to know that information in order to collect your account. We maintain physical, electronic and procedural safeguards that comply with federal regulations to guard your nonpublic personal information. **Information Security:** We restrict access to Customer Information about you to those employees or service providers who need to know that information to service your account(s). We maintain physical, electronic and procedural safeguards that comply with applicable laws and regulations to guard your Customer Information. Whenever we hire third parties to provide support services in order to help us service or manage your account(s), we will require them to conform to our privacy standards and to allow us to audit them for compliance. Such third parties and their employees receiving Customer Information we have obtained about you are required to limit their use of your Customer Information to the particular purpose for which it is shared and they are not allowed to share it with others except to fulfill that limited purpose. Also please note that Turtle Creek Assets', Ltd. Website may contain links or references to other websites which are not under Turtle Creek Assets', Ltd. control. This Privacy Policy does not apply to those websites that are not under Turtle Creek Assets', Ltd. control. We encourage you to read the privacy policy of every website you visit. If you have any questions, comments, or concerns about this Privacy Policy, please contact us at (800) 467-4748. If this Privacy Policy changes, the revised Policy will be posted here.

# Contact US

Phone: (800) 467-4748

Email: info@forwardproperties.net

# EXHIBIT B



# Turtle Creek Assets, Ltd.

February 4, 2019

To whom it may concern,

In consideration of the conclusion of satisfactory arrangements for ███████████ the

debts regarding Aarons account numbers C1134-14082 (Sony PS4) and C1134-14078

(55" Samsung TV) both leased on February 14, 2015, which were charged off to Turtle

Creek Assets, with outstanding balances of $596.62 and $2743.79, respectively,

have been released and discharged as settled in full via a third party agency (Mediation

Services) for $1500.00 which was paid in installments between October 12, 2018 and

January 31, 2019.

Thank you for your business!  Should there be any questions, please do not hesitate to

email me directly at doug@forwardproperties.net or call my direct line at 800-337-6587.

Doug Engle
Special Services
Turtle Creek Assets, Ltd.
Forward Properties International, Inc.

Turtle Creek Assets, Ltd.
by and through its general partner
Forward Properties International, Inc.

Case 7:19-cv-00080-BO    Document 1    Filed 04/23/19    Page 20 of 24





████████████
████████████
████████████

**March 5, 2019**

**Last Four of Social: XXX-XX-**████
**Account Number:** ████████████
**Original Creditor: Aaron's, Inc.**
**Balance: $0.00**

Dear ████████████

Mediation Services has received your payment in the amount of $**1500.00**

Your payment was received on **January 31, 2019**. The above mentioned account is considered **"SETTLED IN-FULL"** contact the following credit reporting agencies and sends them a copy of this notice according to their instruction:

| | | |
|---|---|---|
| Transunion: | +1 800 916 8800 | www.Transunion.com |
| Equifax: | +1 800 685 1111 | www.Equifax.com |
| Experian: | +1 877 284 7942 | www.Experian.com |

If you have any questions regarding the above referenced account, please contact our office! Please refer to the account number listed above. Thank you for resolving your obligation.

Kind Regards,
Michael J. Goldstein
Financial Claims Division
Mediation Services, Ltd.

Director of Compliance Debt Retrieval Consultant CONFIDENTIALITY NOTICE: This correspondence and any attachments are confidential and may be privileged. If you have received it by mistake, please notify the sender and promptly obliterate this document. Any unauthorized use or dissemination of this document and its attachments in whole or in part is strictly prohibited. Please note that correspondences are susceptible to chance. Central Finance (Including its group companies) shall not be liable for the improper or incomplete transmission of the information contained in this communication nor for any delay in its receipt or damage to your system. We do not guarantee that the integrity of this communication has been maintained or that this communication is free of viruses, interceptions and/or interference.
This is an attempt to collect a debt, any information obtained will be used for that purpose.

# EXHIBIT C



Turtle Creek Assets, LLC
19825 N. Cove Road
Cornelius, NC 28031

USPS CERTIFIED MAIL

9207 1901 4298 0400 9546 77

Kimberlyn Acklin

C0807-10647

# NORTH CAROLINA GENERAL STATUTES
# CHAPTER 14
# CRIMINAL LAW § 14-167
# FAILURE TO RETURN HIRED PROPERTY

**_Any person who shall rent or hire,_** any horse, mule or other like animal, or any buggy, wagon, truck, automobile, or other vehicle, aircraft, motor, trailer, **_appliance, equipment, tool, or other thing of value, and who shall willfully fail to return the same_** to the possession of the person, firm or corporation from whom such property has been rented or hired at the expiration of the time for which such property has been rented or hired, **_shall be guilty of a Class 3 misdemeanor_**

## A CLASS 3 MISDEMEANOR CARRIES A <u>MAXIMUM PENALTY OF</u> <u>TWENTY DAYS IN JAIL</u>

# Turtle Creek Assets, LLC

A Receivables Trading Company

5331 Spring Valley Road
Dallas, Texas 75254
Telephone: 1-888-399-1701
Fax: 214-593-2328
www.forwardproperties.net

Kimberlyn Acklin
~~[redacted]~~
~~[redacted]~~
DOB: ~~[redacted]~~
SS#: ~~[redacted]~~

**AARON'S ACCOUNT #:  C0807-10647**

Dear Kimberlyn Acklin,

Pursuant to North Carolina laws (NC Gen Stat § 14-167 – Failure to return hired property), **YOU HAVE FORTY-EIGHT (48) HOURS FROM THE RECEIPT OF THIS DEMAND TO RETURN THE LEASED PROPERTY TO THE LESSOR AT THE ADDRESS SPECIFIED IN THE RENTAL CONTRACT OR A CRIMINAL COMPLAINT WILL BE FILED WITH THE PROPER AUTHORITIES FOR CRIMINAL PROSECUTION.**

If you are unable to return the below mentioned merchandise, please call the following number within (forty-eight) 48 hours of the receipt of this letter TO AVOID CRIMINAL CHARGES BEING FILED (refer to backside):

*[handwritten: 2016]*

**1-888-399-1701**

*[handwritten: Ms. Poole 980-202-6974]*

| Aaron's Store Address: | |
|---|---|
| Rental Contract Date: | 06.15.2015 |
| ITEMS: | HP EAIO PRINTER EPRINT WIRELESS DKTP HP 4/500 AIO 23 AMD E2 W8 |

This statutory notice is provided pursuant to section 14-167 of the Code of North Carolina. You are hereby notified that you have failed to return that certain personal property leased by you under a written rental contract dated **06.15.2015** wherein Kimberlyn Acklin the lessor, to the particular place or at the particular time provided by the said rental contract. Pursuant to North Carolina law, you have forty-eight (48) hours from the receipt of this demand to return the leased property to the lessor at the address specified in the rental contract. Unless the said property is returned to the lessor at the address specified in the rental contract within the time specified above, the lessor may assume that at the time you entered into the said rental contract you intended, knew or expected that you would not perform the terms, covenants and agreements of the lessee thereunder, and that **you intended to defraud the lessor.** In such case the lessor may turn over the rental contract and all other available information relating to this incident to the proper authorities for criminal prosecution.

*[handwritten notes: 12 of 18    12 payment    (1800-435-9544)    12 of 18    $    2015-2016    2015 - 2016 - 2017  (2018) - 2019    Ms Media Gaston    $1170.82]*